U.S. v. Martin has been submitted on the briefs and the record, and we will take up U.S. v. Hull. Good morning. Steve Hormel representing Mr. Hull. What I'd like to do is, there's several issues that were raised. I would like to address the court's order regarding harmless error first, and then the second issue that I want to dig into to try to convince this court that Mr. Hull is entitled to a new trial. I want to dig into that as best I can. And then, if time permitting, maybe address the obstructing justice issue that I think is meritorious. The rest of the issues, unless the court has any questions, I'll just rest on the briefing because the briefing is pretty thorough on all the issues. In relation to the harmless error issue deriving from the Castillo case, the Castillo decision that was filed by this court after the opening brief and the answering brief was filed, there's a case, United States v. Munoz, comma reina. And I believe that issue actually covers the harmless error issue because the court at page 631, fed 3rd, 1028 at page 1030 wrote, a mistake in calculation of the recommended guidelines sentencing range is a significant procedural error that requires remand for resentencing. And it's pretty clear there is a footnote that outlines specific exceptions to the harmless error rule, but I believe this case is right on point and if the court finds that Castillo applies to application note 5 of 4A1.2C1, then I believe that the harmless error rule doesn't apply and remand for resentencing should take place. Does the court have any questions on that issue? Second issue is, and this is the one that I'm really wanting to press hard because I personally and legally believe that Mr. Hall is entitled to a new trial based on the admission of those text messages that reference drug trafficking three months after February 7, 2020. And the reason I say that is it was made really clear at the beginning of the case to the jury that Mr. Hall was not contesting that whatever drugs were found in the trunk of Misty Haynes' car were intended for further distribution. Mr. Hall was claiming he did not place that bag in the car. He was claiming he did not commit the crime that he was charged with. Intent was not even an issue before the district court and at trial. Yes, it's an element of the offense, but it was clear from the very beginning that intent was not an issue. Well, excuse me, counsel, as I understood it, he had testified he'd never been involved in dealing meth or heroin, but those text messages arguably could be used to impeach that, could they not? They weren't admitted for impeachment purposes, and it wasn't argued that way. And you rely on what for that statement? What's that? You're saying it wasn't admitted for that purpose. What do you cite to back that up? The government conceded or argued at trial, in fact, that was one of the points I was going to make, is that the government said to the jury, the defense opening essentially conceded that this amount of drugs in association with the amount of money is what would typically be associated with intent to distribute, but nonetheless, I'm going to outline the evidence. That's at 437-3ER. And you think that substantiates the point that you think that admitting the text for impeachment purposes about his claim he'd never been involved in dealing meth or heroin, somehow that addresses that? This next part does, yes, Your Honor. There's another part after that at page 438. And then in terms of defendant's own intent, that's where you look at things like those text messages. That's where that were found on his phone that Detective McCrillis sees in – should be sees, but sees in May of 2020. You can read those. You can evaluate those as part of your analysis concerning whether the defendant intended to further distribute the drugs in that bag, 3ER-438. Well, isn't that the very question I asked? In other words, he said he never was involved in it. The government says these text messages show you can evaluate whether he was, right? They're referencing the intent to distribute element of the offense because the intent element was not even in dispute during the offense. They didn't argue that it made him look like a liar. They argued the – You're saying that even though that follows from that, that he was a liar, if the text messages were correct, that it has to be explicitly stated in order to allow the text to be introduced? Well, here we have a jury note that tells you how – what the jury – kind of gives an insight into what is going on in the jury's mind. And, in fact, they used those text messages as substantive evidence of intent to distribute because they said that in their note. They didn't use it to say that Mr. Hull's a liar. And our whole defense – you know, I put in part of my opening brief, you know, binoculars all of a sudden appear in Detective Melton's testimony, and that's exactly what happened. They suddenly appeared. There was nothing before that, and I impeached him. I impeached him as hard as I could because it was – just came up as I could on the absence of that in his reports, and that he didn't identify Mr. Hull until the car was stopped. The jury obviously didn't just go in and slam dunk this verdict. It was a two-day trial, and they were out for a half a day. So the whole defense was to show that Detective Melton was not believable. You add the – you add these text messages to the mix, and the jury now indicates they're using it to determine whether or not he had an intent to distribute drugs. Of course they had a prejudicial effect, and intent, as they were used by the government, was not even an issue. Not even an issue. So it completely destroyed the value of the impeachment that was conducted on Detective Melton at trial, completely mitigated or destroyed it and devalued that impeachment. And I believe, just because of the length of the testimony compared to the shortness of the trial, or the length of the deliberations compared to the shortness of the trial, that there was a question about Detective Melton's believability. On retrial, there will remain a question about Detective Melton's believability. But those text messages being admitted to prove something that was conceded at trial, all the way through trial, even in cross-examination, that those drugs that were found in that bag were intended for distribution. So that's why I firmly believe that Mr. Hull is entitled to a new trial. I think a new trial has a chance. And so I would ask— If we conclude that the texts were validly introduced for impeachment purposes, you lose, basically, you're saying, right? I don't think so. And the reason—they weren't used for impeachment. It's obvious the jury didn't consider them for impeachment. And it's obvious they were thinking—they were trying to decide something else. And there's three of those jurors that were the authors of that note to the jury that it's obvious that there was some question. And I think if there's a question like that and the jury is showing some confusion in relation to the evidence, I believe that Mr. Hull is entitled to a new trial for that reason. Honestly, I do. Is there any other questions on that subject? No. Okay, so the obstruction of justice. Application Note 2 of 2C1.1 says that the obstruction of justice is not intended to punish someone who testifies at trial, unless—the exception is—it constitutes perjury. Under federal law, Brandy Berry and the hammer case that's cited, the U.S. Supreme Court hammer case that's decided or cited in the brief, indicates that there's a certain quantity of proof that is required to constitute perjury. Two witnesses to the falsity, direct witnesses, or one direct witness to the falsity and other corroborating evidence. I don't know how you can constitute perjury under federal law unless that type of proof is admitted. And the only thing that was admitted at trial was Detective Melton's testimony. There was nothing to corroborate, no scientific evidence, no documentary evidence, nothing else that would corroborate Detective Melton's testimony that it was Bradley Hull he saw put that bag in the back of Misty Haynes' car. So I believe, again, if they're going to use an enhancement and it has to constitute perjury, I think it needs to be under the federal standards for proving perjury. Thank you. Any questions? You want to reserve your time? Yes. Thank you.  Good morning, Your Honors, and may it please the Court. My name is Michael Ellis. I'm an assistant United States attorney for the Eastern District of Washington based in Spokane. I'm going to start where Mr. Hormel spent most of his time, which is on the 404B issue concerning the text messages. I think this issue, as it's presented by the defense, fundamentally misinterprets and misunderstands what the government's burden is at a trial. The government has to prove every element beyond a reasonable doubt. It does not matter if a defense attorney stands up and says, we're only focusing on identity, we're only focusing on drug type, whether it's a controlled substance. That does not matter. The jury still has to go back there and find if the government proved beyond a reasonable doubt every single element on the to-convict instruction. And that's exactly what this Court said in United States v. Hadley when presented with this same argument. The defense's argument here is primarily based off of this old case called United States v. Powell, which this Court 30 years ago in Hadley roundly rejected, basically said that language is dicta, and it's dicta because a defendant cannot preclude the government from proving intent simply by focusing their defense on another element of the crime. The government still has to prove it. The jury still has to find it beyond a reasonable doubt. Now, in terms of the text messages here, this Court has held over and over and over again, Ramirez, Robles, Romero, Howell, Martinez, Vaux, that in a possession with intent to distribute controlled substances case, the government can use 404B evidence of other drug trafficking activity to prove intent. And that's all that the government can do. with the charged conduct. And do you think that was there? The government offered those messages under 404B. That was the government's notice. That's what the government argued. The government at no time argued inextricably intertwined when the district court. But do you think that was there? I mean, I don't think it comes in under inextricably entwined. And I think that ruling is the reason the jury was confused and asked, you know, do we just look at the events of February 7th, I think February 7th, or do we look at other events to determine intent? And the judge, I think, very clearly came back and answered that saying, no, he's charged with these two crimes on or about February 7th. So I guess I'm just trying to say, was that ruling error and was it cured? Or was it harmless error? So I think it's a number of those things. First of all, no, I did not defend the inextricably intertwined finding in briefing before this court, and I don't try and defend it now. I don't agree with it. I think the government offered this evidence under 404B. And even with that ruling, which on its face plausibly does open the door to when something's admitted as inextricably intertwined, it's admitted for all purposes. But even with that, the government still in closing cabined the argument to intent because that was why I believed they were admissible. And so in terms of, no, I do not agree with that. But a couple of points to that. One, this court can affirm on any basis in the record, and I think the record does support the 404B finding that the government put forward here, given how they were used and this court's extensive jurisprudence on 404B and distribution and possession with intent to distribute cases. I do think the jury in question is not quite as clear cut as the defense would make it out to be. My opposition to the most natural reading is it's simply a timing question. It's whether a defendant charged with possession with intent to distribute has to intend to distribute that drugs on February 7th of 2020 or at any time in the future. Because obviously a defendant may possess drugs with intent to distribute. They don't necessarily have to intend to distribute them later on the day charged. It could be at any time in the future. Could the jury have also considered that evidence for impeachment purposes in the face of the defendant's testimony that he had never dealt drugs? I think they could have considered it for that basis. Obviously the defendant was impeached with his prior conviction for being involved in drug distribution activity. Obviously the order in which things came into evidence, these text messages did come into evidence before the defendant testified, but I think it's plausible that after the defendant did open the door to impeachment on his own involvement in drug trafficking, that that could have been an alternative basis for the jury to consider them. Conceitedly, the government did not argue that, but that doesn't necessarily preclude the jury from coming to that conclusion on their own. And I think, as Your Honor mentioned, the judge's answer to the question incurs this completely. Juries are presumed to follow the instructions they are given by district court judges, and the district court judge here clearly told them, no, you are to consider whether or not this defendant possessed that intent on February 7th of 2020. And then in terms of an overall harmless error analysis, although the defendant's discussion in opening and closing of the intent element does not preclude the government from bringing in this evidence, it does educate whether it would be harmless to the verdict, because as Mr. Hormel discussed, the defendant didn't talk about intent. It's an identity case. And ultimately, it's the government's position that the evidence is quite strong on identity. Your Honors have access to the photographs of Mr. Hull and Mr. Mueller, the purported scapegoat. They don't look anything alike. All the witnesses testified that they don't look anything alike. They didn't look anything alike on February 7th of 2020. It's simply not plausible that these text messages tipped the verdict when the question was a whodunit, Mr. Mueller or Mr. Hull. The other issue I wanted to discuss was the issue that the court raised in supplemental briefing, which is the Castillo issue. It's kind of a close question where the prior conviction fits within the guidelines. And I think that's exactly right. I think it is, given how this court has interpreted the application notes to the guidelines in Castillo and Kirilyuk. I do think this is a closer question. It's not as clear-cut as Castillo. As this court's interpreted, adding something else to a guideline, or Kirilyuk, as this court interpreted it, having an application note that doesn't make sense and is inconsistent with a standard, reasonable understanding of the word loss. Here, as the court's aware, 4A1.2C1 lists careless or reckless driving. And those only score if you have a sentence of over 30 days or more than a year of probation. Washington State has offenses that correlate very closely to those. They have an offense called reckless driving. They have an offense called negligent driving in the second degree, which is, as the government's argued, very akin to what one would imagine careless driving to be. It's driving negligently and causing a risk to a person or property. What those don't necessarily bring in are alcohol-related or intoxicant-related driving offenses. Admittedly, if you go outside and you ask someone on the street if drunk driving is reckless, they will probably tell you yes. But what we're talking about here is a legal definition, and Washington State has a legal definition of reckless driving. It has no reference to intoxicants. It is the wanton or willful disregard for driving with a wanton or willful disregard for human life. Negligent driving in the first degree, both as an independent charge and, in Mr. Hull's case, as pled down from a driving under the influence original charge, does require some evidence of intoxicant use in the negligent driving context combined with bad driving. You have to have bad driving, and then you have to exhibit the effects of having consumed, as relevant here, alcohol. Counsel, was the district court permitted to consider application note number five in basically adding this extra criminal history point? I think at the time, definitely, because Thornton, from this court, essentially says so. Obviously, things have changed in the interim. Castillo somewhat throws a wrench in the analysis. But I think, nonetheless, the district court still could. It was following Supreme Court laws that threw the wrench in new analysis from the Supreme Court. What I mean is that the sentencing had happened prior to Castillo, prior to these cases applying Keysore to the guidelines. And so I think it was first raised in Mr. Hormel's reply brief because the reply brief was – the answering brief was due pre-Castillo and the reply brief due afterwards. Well, given Castillo, don't we have to reverse for resentencing, putting aside all the rest of it? But for resentencing, could the district court have considered application note number five? Yes. So I don't think you have to reverse. In the cabinet to the Castillo application note five issue, I don't think you have to reverse for two reasons. One, it's the government's position that application note five is – we're talking about the same problems that this court found in Castillo and Kirolyuk. Careless or reckless driving does not – given that those can correlate to very specific Washington State statutes criminalizing solely bad driving, does not necessarily bring in alcohol-related driving offenses like DUI, like negligent driving in the first degree. And if it doesn't necessarily incorporate those kind of offenses, then the terms can be read to be ambiguous. And under Kizor and Castillo, this court can then say, well, because those two terms, careless or reckless driving, do not necessarily incorporate alcohol-related driving offenses, we can now look to the application notes and would you look at that. Application note five explicitly says DUI and similarly named offenses, like in this context, negligent driving in the first degree, are not to be excluded under 4A1.2C. Another reason is in Hsu, which was a case decided over the summer after Castillo, but again, analyzing the guidelines post-Kizor, this court discussed that even if you put – even if you accept all of Kizor and Castillo, even if you say, well, we can't defer, we can't mandatorily defer to the application notes, you can still weigh the application notes based on their power to persuade. And it's the government's position that application note five is particularly persuasive. Look at the offenses in 4A1.2C. Trespassing, driving without a license, not paying your child support. These offenses are nothing on par with the risks and danger and penalties associated with driving under the influence. As this court noted in Landa and I think common sense tells us all, driving under the influence can be an extremely dangerous offense. Most – it's hard to imagine someone dying because of a trespassing or not paying child support. People die frequently because people get behind the wheel under the influence of intoxicants. And then you look at the penalty structure. Washington State has a very kind of particularized penalty structure for driving under the influence. The more you rack up, the higher your mandatory penalty is until you're fourth in 10 years. Well, that's a felony. You can commit as many trespassings as you want, and you're not going to suddenly be a felon. You're not going to suddenly be going to Washington State prison. So Washington State tells us that when you're looking at the similarity analysis as guided by application note 12A as incorporated by this court in cases like Graub, these offenses are not similar. This is a far more serious category of offenses. And so even if the court finds that, okay, under Castillo we can't find genuine ambiguity, this court should still take into account that you can weigh whether this is persuasive. Driving drunk is extremely dangerous conduct. It should be incorporated, even if you didn't get 30 days in jail, in a defendant's criminal history scoring. And then the harmless error analysis. So did Hall not get 30 days in jail for that negligent driving? No, he got, I think, a single day. So it would not be removed from him. But if we decide it was similar to the reckless or careless, then it doesn't qualify. But if we decide it comes under the first provision of the application note, it does qualify. I think if the court finds that the words careless or reckless driving are not sufficiently ambiguous and they do incorporate alcohol-related driving offenses, then that's where the government's argument that you should still be persuaded by application note 5 because it's a common-sense application note. I mean, it was the amendment 766 from 2012 from the commission. The commission went out of their way to let district court judges know that DUI and related intoxicant driving offenses should be scored for this exact reason that they're dangerous. And what was the district court's rationale for including it here? So at the time, it was because application note 5 was presumed to be just fully operative and negligent driving in the first degree is an alcohol-related driving offense in Washington State. And in Mr. Hall's case where it's pled down from DUI, it's incorporated in the Washington State DUI enhanced penalty structure under the statute. And so the theory was, well, it's a similar offense to DUI, so application note 5 operates and Thornton and Cole and these other cases to essentially remove it entirely from the 4A1.2C1 analysis. In terms of just harmless error, even if the court disagrees with me on all of that, the court nonetheless does not have to remand for resentencing on this issue alone. Under the Munos Camarena, a variety of factors that a court can consider whether an error is harmless. If a district court has, you know, there's a sentencing analysis with respect to an incorrect guideline range, but there's substantial overlap with what would be the correct one, the court, and then there's a sufficient explanation for the sentence, the court can nonetheless affirm if incorporating Williams, this court is persuaded that the district court would impose the same sentence. There is substantial overlap between these ranges. As sentenced, 235 to 293, revised would be 210 to 262, substantial overlap. The district court noted Mr. Hall's age, Mr. Hall's drug dependence as mitigating factors, and then, of course, made the finding that the 200-month sentence was sufficient, but not greater than necessary given the conduct. With that finding, with consideration of the mitigating factors and of the downward variance already, there's not a lot of reason to think that just simply because this conviction is excluded, the district court would substantially change his analysis. So I'm out of time, but if the court has any questions, I'm happy to answer them. Thank you. Thank you, counsel. Okay, Mr. Hermel. Thank you. So 4A1.2C1 is written in a way that all misdemeanors count. That's what it says, all misdemeanors count. DUIs, driving while intoxicated, are misdemeanors in the state of Washington, so they all count. What Application Note 5 does is expands the definition of what a DUI or driving under the influence in Washington does. This is the exact same problem that you had in Castile, where they expanded the definition of a controlled substance offense. That's why Castile absolutely applies directly to this case. They are expanding the definition of driving under the influence or driving while intoxicated. Do you include? Say that again? I'm just asking in what way does Application Note 5 expand? If there's other offenses out there that are something other than a driving while under the influence, but maybe if they're alcohol-related like this negligent driving, it's expanding the definition of a DUI. Washington has a DUI statute. It applies. So it's expanding the crimes that are, because Washington has this kind of unique first-degree negligent driving statute, it doesn't require intoxication, it just requires that you exhibit signs that you've had alcohol. So it's not even under the influence or an intoxication standard. So that's why I argued, you know, first in the opening brief it doesn't even apply. But now with Castile, you're allowing what doesn't necessarily constitute a DUI in the state of Washington. You're expanding the definition to include it now in 4A1.2C1. You're actually allowing to bring something in that wouldn't ordinarily apply. So opposing counsel obviously argues that even if Castile bars our consideration in the way the district, footnote 5, in the way district court did, nonetheless there are all these other cases and elements that we can consider whether there's a rational basis to find that what was done, given your client's history, that we can still uphold the sentence. What's your response to that? I really differ with that because of the case law. Judge Rice varied down 35 months from the low end of the higher guideline range. Thirty-five months below the low end of the new guideline range, which is 210, would be 175 months. He was inclined to do this variation based on Mr. Hull's age and how old he would be once he's released from prison, his mother's health conditions. So I think the judge, there's nothing in the record that indicates the judge wouldn't vary from the lower guideline range. So I think that's why remand is appropriate in this case. One other point I'd like to make is I don't believe the case law supports that just because the government has to prove an element, that that element, that 404B allows them automatically to have other act evidence, and that's based on the Curtin case that I cited in my brief. The Curtin case in turn cites Huddleston v. United States, 485, 681, that says, and it would be at 685, extrinsic act evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inference from conduct. This intent was not disputed at trial. Huddleston, although addressing a different issue, was addressing how relevancy works in relation to 404B. And if the issue is not disputed, then other act evidence can only be prejudicial without any probative value because the government doesn't need it. So I would, again, differ with Mr. Ellis in the law in relation to, I think, the law in this circuit, and I think the law from the United States Supreme Court supports the fact that if it's not needed, the jury note does not indicate that they were considering that evidence for impeachment purposes. They used it for substantive purposes. Thank you. Thank you very much, Mr. Hermel. U.S. v. Hull will be submitted, and we will
judges: WARDLAW, SMITH, Matsumoto